FIRSTENERGY CORPORATION et al., Appellants,

v.

CITY OF CLEVELAND et al., Appellees.

[Cite as *FirstEnergy Corp. v. Cleveland,* 179 Ohio App.3d 280, 2008-Ohio-5468.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90784.

Decided Oct. 23, 2008.

Roetzel & Andress and Ricardo J. Cardenas, for appellants.

Robert J. Triozzi, Director of Law, and Larry G. Webb, Assistant Director of Law, for appellees.

MELODY J. STEWART, Judge.

{¶ 1} Plaintiff-appellant, FirstEnergy Corporation, and its affiliate, Cleveland Electric Illuminating Company, appeal from a summary judgment issued to defendant-appellee city of Cleveland on their claims that the city's water department negligently caused damage to FirstEnergy's underground equipment and utility lines while performing repairs on water lines. The court held that the city's maintenance of water lines was a proprietary function under the sovereign-immunity statutes and that the actions of the city's workers in the course of making repairs were undertaken in the exercise of judgment or discretion. FirstEnergy contests those findings. We find no error and affirm.

I

{¶ 2} FirstEnergy's complaint set forth four separate incidents in which it alleged that the city's water department, while responding to water leaks, negligently excavated at those sites and damaged FirstEnergy's underground utilities and equipment. FirstEnergy also alleged that its underground equipment and facilities were fixtures to the land and that the city's construction work physically invaded FirstEnergy's real property, constituting a trespass. The first incident occurred on January 25, 2003 in the vicinity of East 18th Street and Euclid Avenue; the second incident occurred on September 2, 2003 in the vicinity of 3531 E. 142nd Street; the third incident occurred on September 16, 2003 in the vicinity of Berea Road and Madison Avenue; and the fourth incident occurred on October 30, 2003 in the vicinity of East 131st Street and Coit Avenue.

{¶ 3} The city sought summary judgment on grounds that the damage alleged by FirstEnergy in the first and fourth incidents was not caused by any excavation or negligence by the city and that it did not excavate in the vicinity cited in the third incident. The city also argued that it was immune, as a matter of law, from FirstEnergy's trespass claims. FirstEnergy opposed the city's motion for summary judgment by citing evidence showing that the city had prior knowledge of water leaks at the location of the first incident, that the city took too long to shut the water off at the site of the third incident, and that the city failed to install the correct type of fire hydrant at the fourth location.

{¶ 4} FirstEnergy settled with the city on its claims relating to the first and second incidents, leaving only the third and fourth incidents for adjudication.[1]

---

1. Both parties agree that they dismissed the second incident, yet they continue to assert that the first incident is still a viable claim even though they filed a stipulation of dismissal with the court as to that claim. That stipulation states: "We, the attorneys for FirstEnergy Corp., the Cleveland Electric Illuminating Company, and the City of Cleveland, stipulate under Rule 41 of the Ohio Rules of Civil Procedure that Incident 1 (alleged damage to underground facilities

The court heard oral argument on the city's motion for summary judgment and held that there were issues of material fact as to the city's negligence, but that regardless of whether these issues existed:

{¶ 5} "The City of Cleveland is entitled to summary judgment in that it is immune from liability pursuant to O.R.C. Section 2744.03(A)(5) as the alleged losses are based on behavior resulting from the exercise of judgment or discretion on the part of Defendant City of Cleveland 'in determining whether to acquire, or how to use, equipment, supplies, material, personnel, facilities and other resources' and there is no allegation that such 'judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.'"

{¶ 6} The court went on to hold that to the extent that any of FirstEnergy's claims were based on a theory of trespass, the city was "entitled to summary judgment as to such claims in that they are barred pursuant to O.R.C. Section 2744.02."

## II

### A

{¶ 7} The courts address questions of immunity as a matter of law, so they are particularly apt for resolution by way of summary judgment pursuant to Civ.R. 56. We employ the three-tiered analysis set forth in *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7–9, to determine whether a political subdivision enjoys immunity under the Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744:

{¶ 8} "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. * * * However, that immunity is not absolute. * * *

{¶ 9} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *

{¶ 10} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense to that section protects the political subdivision from liability, then the

in the vicinity of East 18th and Euclid Avenue) and Incident 2 (alleged damage to above ground facilities in the vicinity of 3531 E. 142nd Street) be dismissed with prejudice. Defendant will bear the court costs. The Court may enter an order accordingly, notice by the Clerk being waived." The court signed this stipulation and had it filed with the clerk of the court on July 6, 2007. There being no other evidence in the record to contradict the contents of this dismissal, we deem the claims relating to the first and second incidents to be dismissed with prejudice and therefore disregard any argument relating to the first incident.

third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability."

## B

{¶ 11} The parties agree that under the first and second tiers of this analysis, the city's operation of a municipal water-supply system is a proprietary function, see R.C. 2744.01(G)(2)(c), and that the city is "liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2).

{¶ 12} The parties dispute the third tier of the analysis: whether any of the defenses in R.C. 2744.03 apply to provide the city with a defense against liability. The trial court found that the city had a defense against liability under R.C. 2744.03(A)(5), which states:

{¶ 13} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

{¶ 14} " * * *

{¶ 15} "(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 16} In *Ohio Bell Tel. Co. v. DiGiolia–Suburban Excavating, L.L.C.*, Cuyahoga App. Nos. 89708 and 89907, 2008-Ohio-1409, 2008 WL 802641, we considered a very similar fact pattern in which several utility companies brought suit against the city, claiming that its water department had acted negligently when stopping a water leak because it failed to shut off water to the correct water main and caused damage to the utilities' equipment. Noting that none of the complaints filed against the city alleged that the city's employees engaged in wanton or reckless conduct as required by R.C. 2744.03(A)(5), we stated:

{¶ 17} "[T]he City maintained that the appellees' complaints failed to contain allegations sufficient to overcome the application of governmental immunity; specifically, the City asserted that none of the appellees had alleged that the City acted maliciously, in bad faith, recklessly, or wantonly. Although the appellees

could have moved to amend their complaints or moved under Civ.R. 15(B) to have the pleadings conform to the evidence, they did not do so. Accordingly, * * * the trial court erred by denying the City the protections of qualified immunity under R.C. Chapter 2744." Id. at ¶ 40.

{¶ 18} Given the absence of any allegations that set forth the required mental status required by R.C. 2744.03(A)(5), we held that the city was entitled to governmental immunity as a matter of law. Id. at ¶ 41–42.

{¶ 19} FirstEnergy's complaint made no allegation that the city's employees acted with "malicious purpose, in bad faith, or in a wanton or reckless manner." Moreover, at no point in its opposition to summary judgment did FirstEnergy offer any evidence of reckless or malicious conduct. Its expert could only state that "the City of Cleveland should have been more timely in shutting down the water leaks," that it "should have equipped its trucks with line valve maps and compressors," and that it "should have closed off the main beyond the seven valves * * * to shut-off as quickly as possible." None of these statements goes beyond the ordinary negligence standard of care, and thus fall outside the heightened care standards necessary to impose liability under R.C. 2744.03(A)(5). Consistent with *Ohio Bell*, we conclude that the city was entitled to sovereign immunity as a matter of law on the negligence claims for incidents three and four.

### III

{¶ 20} FirstEnergy also maintains that the court erred by granting summary judgment on its trespass claim. It maintains that principles of sovereign immunity do not apply to claims of alleged trespass in the political subdivision's course of engaging in a proprietary function.

{¶ 21} The flaw in FirstEnergy's argument is that it maintains that the city's trespass on its equipment arose from the city's "negligent act or omission in performing a proprietary function." At no point, however, did FirstEnergy allege that the city carried out that proprietary function with "malicious purpose, in bad faith, or in a wanton or reckless manner" as required by R.C. 2744.03(A)(5).

{¶ 22} In reaching this decision, we distinguish *W. 11th St. Partnership v. Cleveland* (Feb. 8, 2001), Cuyahoga App. No. 77327, 2001 WL 112121, in which we held that sovereign immunity did not apply against the city for exfiltrations from its sewer systems. Noting that there had been competent, credible evidence to show that the exfiltrations occurred because of a lack of maintenance of a sewer system, we held that R.C. 2744.03(A)(5) did not apply. Id. at *5. This holding resulted because the city's decision of whether or not to engage in sewer

maintenance did not involve the use of equipment, but merely a judgment on when such maintenance should occur.

{¶ 23} In the present case, the alleged trespass to FirstEnergy's property occurred while the city's workers used excavating equipment to find the source of water leaks. This was not a question of whether maintenance should be performed, but a question of how the city used its equipment to make repairs to broken water lines. Unlike in *W. 11th St. Partnership,* the city's employees in this case were required to exercise judgment in the use of the equipment employed to stop the water leaks. We conclude that the court did not err by granting summary judgment on the trespass/nuisance claims.

Judgment affirmed.

ROCCO, P.J., and BLACKMON, J., concur.